# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | BKY No. 08-34082 |
| | Adv. No. 10-03054 |
| LELAND WILLIAM JACOBS and | |
| CAROLYN LOUISE JOHNSON-JACOBS, | |
| Debtors. | |

| | |
|---|---|
| LELAND WILLIAM JACOBS, | Civil No. 11-1331 (JRT/JSM) |
| Appellant/Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT JUDGMENT** |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | |
| Appellee/Defendant. | |

Leland William Jacobs, 173 Wheelock Parkway East, St. Paul, MN 55117, plaintiff-appellant *pro se*,.

Adam C. Trampe, **EDUCATIONAL CREDIT MANAGEMENT CORPORATION**, One Imation Place, Building Two, Oakdale, MN 55128, for defendant-appellee.

This matter is before the Court on appeal from an order for judgment of Chief United States Bankruptcy Judge Gregory F. Kishel.  (Order, Apr. 14, 2011, Docket No. 1.)  By that order, the Bankruptcy Court determined that debtor Leland William Jacobs' ("Jacobs") debt to Educational Credit Management Corporation ("ECMC") was excepted from Jacobs' bankruptcy discharge by operation of 11 U.S.C. § 523(a)(8).  The Court finds Jacobs has not demonstrated undue hardship, and thus affirms the Bankruptcy Court's order.

## BACKGROUND

Born in 1938, Leland Jacobs is 73 years old.  He is married to Carolyn L. Johnson-Jacobs, age 43, whose vision is impaired in one eye and who relies on Jacobs for transportation.  (Stipulation of Uncontroverted Facts ("Stip") ¶¶ 1-2, 10, Adv. Proc. No. 10-03054, Apr. 8, 2011, Docket No. 29.)  Other than her vision impairment, Ms. Jacobs is in good health and has no medical issues preventing her from working full-time. (*Id.* ¶ 15.)

Jacobs decided to pursue higher education later in life.  He graduated from Metropolitan State University in 1993 with a BA in Psychology, and from 1995 to 1998 he studied law at William Mitchell School of Law.  He was approximately sixty years old when he graduated from law school.  Jacobs incurred the student loan debt at issue in connection with his legal education.[1]

Jacobs worked for Metro transit for many years before retiring in January 2008. (*Id.* ¶¶ 6-7; *see also* Hr'g Tr. at 43, 48-49, Adv. Proc. No. 10-03054, Apr. 13, 2011, Docket No. 49 (stating that he was forced to retire because of his age, dashing plans to earn over $100,000 per year under a liberal overtime policy).)  Jacobs currently works as a part-time substitute teacher for the St. Paul school district, where he receives $110 for each day of work and $60 for each half day.  In 2011, Jacobs receives unemployment of

---

[1] (*See* Trial Br. of Def. Educ. Credit Mgmt. Corp. at 2, Adv. Proc. No. 10-03054, Mar. 1, 2011, Docket No. 25.)  The facts enumerated in this paragraph do not appear in the record on appeal and are offered here for context.  Jacobs testified that he graduated from law school and worked in law-related jobs for several years after graduation, though he never practiced law. (Hr'g Tr. at 41-43, Adv. Proc. No. 10-03054, Apr. 13, 2011, Docket No. 49.)

$120/week if he cannot find work substitute teaching.  (Stip. ¶ 7.)  Jacobs' adjusted gross

income from 2005 to 2010 is as follows:

| Year | Adjusted Gross Income |
|------|----------------------|
| 2005 | $53,229 |
| 2006 | $61,109 |
| 2007 | $58,468 |
| 2008 | $31,357 |
| 2009 | $28,438 |
| 2010 | $21,008[2] |

(*Id.* ¶ 11.)

Jacobs filed for bankruptcy on August 12, 2008 and received a discharge on

November 18, 2008.  (*Id.* ¶ 4.)  Because student loan debt is generally not dischargeable

in bankruptcy, Jacobs owes ECMC a sum of $110,658.06 (as of Feb. 28, 2011) from two

consolidation loans obtained through the Federal Family Educational Loan Program.

Jacobs does not dispute any aspect of the amount owed or the interest that accrues per

diem.  (*Id.* ¶¶ 12-14.)

On March 16, 2010, Jacobs filed a complaint against Sallie Mae seeking discharge

of his student loan debt.  (Compl., Adv. Proc. No. 10-03054, Mar. 16, 2010, Docket

No. 1.)  Over a year later, on April 13, 2011, Jacobs represented himself at a brief bench

trial.  After calling himself as a witness, Jacobs requested to read a prepared statement

from the witness stand.   (Hr'g Tr. at 36-38.)   "Recognizing the difficulties and

recognizing the foolishness of having [Jacobs] asking [himself] questions and responding

---

[2] Jacobs' 2010 tax return is referenced in the record as Plaintiff's Exhibit No. 8, (*see* Hr'g Tr. at 51), though the document is not on the Bankruptcy Court docket, (*see* Witness and Ex. R., Adv. Proc. No. 10-03054, Apr. 18, 2011, Docket No. 36), and has not been transmitted to the Court.  While the parties dispute whether the 2010 tax return is in the record, the Court's conclusion is the same in either case.

to them," the Court agreed to allow Jacobs to testify in narrative form. (*Id.* at 38.) It cautioned, however, that Jacobs should not simply read from the prepared statement. (*Id.* at 36.) Jacobs agreed to use his notes simply to refresh his memory as he testified. (*Id.* at 38.) Throughout the course of his testimony, Jacobs asked the Court to refer to his notes; the Court granted his request in each instance.

Following Jacobs' presentation of his case, the Court granted ECMC's oral motion for a judgment on partial findings, holding that Jacobs had failed to present enough evidence to make out a prima facie case of "undue hardship" as required by 11 U.S.C. § 523(a)(8). *See* Fed. R. Bank. P. 7052.[3] The Bankruptcy Court entered judgment rejecting Jacobs' effort to discharge his student loan debt. (J., Apr. 14, 2010, Docket 1.) Jacobs appealed the judgment to the Bankruptcy Appellate Panel for the Eighth Circuit under 28 U.S.C. § 158(a)(1), and ECMC elected to have the appeal heard in this Court. (J., Adv. Proc. No. 10-03054, Apr. 29, 2011, Docket No. 41.)

## ANALYSIS

Jacobs' statement of the issues sets forth four questions on appeal, rephrased here for the sake of clarity. First, did the trial court err in allowing substitution of ECMC as the defendant? Second, should plaintiff have been allowed to read his prepared testimony into the record rather than only refer to his notes? Third, did the trial judge err in concluding that Jacobs had failed to present sufficient evidence to allow a finding of

---

[3] Bankruptcy Rule 7052 provides that Rule 52 of the Federal Rules of Civil Procedure applies in bankruptcy proceedings. Rule 52(c), in turn, provides: "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c).

undue hardship?  Fourth, should the trial court have acted as "more of a moderator" so as to "uncover the necessary facts of the case" given that Jacobs was "so unqualified" to present his case effectively?

Jacobs expressly abandoned the first issue following ECMC's reply brief.  (*See* Appellant's Reply Br. at 3, July 6, 2011, Docket No. 8.)  As to Jacobs' remaining claims, the Court finds no error in the trial court's decision not to allow Jacobs to read from prepared notes, rejects Jacobs' suggestion that the trial court acted improperly in failing to act as an independent investigator, and affirms the Bankruptcy Court's conclusion that Jacobs has not made out a prima facie case of undue hardship.  The Court will first address Jacobs' objections to the Bankruptcy Court's management of proceedings, and then turn to the substance of his undue hardship claim.

## I.   THE BANKRUPTCY COURT'S MANAGEMENT OF THE PROCEEDINGS

Liberally construed, the second and fourth issues that Jacobs presents for review are best understood as objections to the trial court's management of the proceedings.  "Trial management decisions are within the court's discretion and are reversed only for an abuse of discretion."  *Harris v. Chand*, 506 F.3d 1135, 1141 (8th Cir. 2007).  Jacobs first argues that the Court's decision not to let him read directly from prepared notes was error.  He then suggests that the Court erred in declining to act as "more of a moderator" so as to "uncover the necessary facts of the case."  (Appellant's Br. at 9, June 11, Docket No. 3.)  The Bankruptcy Court did not abuse its discretion.  On the contrary, the Court went out of its way to suggest on several occasions that Jacobs' presentation of the evidence was likely insufficient.

The Court's decision not to allow Jacobs to read verbatim a prepared statement from the witness stand was well within the bounds of its discretion.   Jacobs cites a number of California cases referencing the duty of the trial judge to see that a cause is not defeated by mere inadvertence or a technicality.[4]   ECMC cites *Hutter Northern Trust v. Door County Chamber of Commerce* for the proposition that the trial court's exercise of control over the manner in which Jacobs presented his evidence was proper.   467 F.2d 1075 (7th Cir. 1972) (upholding court's denial of *pro se* plaintiff's request to testify in narrative form as "well within the proper exercise of the judge's discretion").   The "constant fusillade" of objections lodged against the *pro se* party in in *Hutter* – most of which were granted summarily and without explanation – bears no resemblance to the Jacobs trial.   *See id.* at 1076.   While the Court did not allow Jacobs to read verbatim from his prepared notes, it did allow him to testify in narrative form subject to ECMC's objections.   Moreover, the Court overruled nearly all of ECMC's relevancy and hearsay objections.[5]

---

[4] *See, e.g.*, *Bare v. Parker*, 196 P. 280, 281 (Cal. Ct. App. 1921) ("The trial court . . . properly refused to permit an inadvertence or want of attention on the part of counsel to work what he conceived to be an injustice."); *Farrar v. Farrar*, 182 Pac. 989, 991 (Cal. Ct. App. 1919) ("It is time it was understood that a trial judge does not sit as a mere referee in a contest of wits between counsel in the case, but that it is not only within his province, but is his duty, to see that as nearly as possible the issues shall be disposed of on their merits; and it is not out of place for him to call attention to omissions in the evidence or defects in the pleadings which are likely to result in a mistrial."); *Hellings v. Wright*, 156 P. 365, 368 (Cal. Ct. App. 1916) ("It seems sometimes to be thought that the highest prerogative of the trial court is to conduct the proceedings so that the cause may be won or lost by virtue of some technical advantage. The truth is, of course, that the trial court should see, if possible, that the case is tried upon its merits and decided fairly and justly.").

[5] For example, in testifying to Jacobs' oral understanding with his wife that each spouse would continue to split the finances in a particular way, Jacobs testified as to his wife's out-of-court representations.   (*See* Hr'g Tr. 47-48.)   The Court overruled ECMC's hearsay objection,

(Footnote continued on next page.)

Indeed, the transcript does not evidence unfairness to Jacobs of any kind.  After Jacobs completed his testimony, the Court remarked:

> I am going to make the observation, Sir, and this is going a little far in your direction, but I am going to do it nonetheless, I don't have any evidence in front of me, I don't think, on which I can determine whether you have an income surplus at this point or whether you lack one, let alone going forward.  You testified in generalities.

(Hr'g Tr. at 51-52.)  In response to the Court's observation, Jacobs sought to introduce Plaintiff's Exhibit No. 2, a summary of Jacobs' living expenses and income for a six-month period.  The Court admitted the exhibit over ECMC's relevancy and foundation objections.  (*Id.* at 53-59.)  Upon doing so, the Court again cautioned Jacobs, "[T]hat may or may not be everything that's incumbent on you to prove."  (*Id.* at 59.)  Shortly thereafter, and without further testimony or proof, Jacobs rested his case.  (*Id.* at 61-62.)

Jacobs' authorities to the effect that the trial judge must ensure that a cause is not defeated by mere inadvertence are of little assistance under these circumstances.  A litigant has the right to represent himself.  Yet "if he does so, he should be restricted to the same rules of evidence and procedure as those qualified to practice law; otherwise, ignorance is unjustifiably rewarded."  *Hutter N. Trust*, 467 F.2d at 1079 (internal citation omitted).  Moreover, *pro se* representation does not excuse a litigant from complying with substantive law.  *See Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856-57 (8th Cir. 1996); *Farnsworth v. City of Kan. City, Mo.*, 863 F.2d 33, 34 (8th Cir.

---

(Footnote continued.)

stating, "I am going to take his testimony as – as his observation as to what she's done since then as long as he ends up saying that eventually . . . ." (*Id.* at 47-48.)

1988) (per curiam).  Jacobs' objection is best understood as a critique of a justice system that relies on the adversarial presentation of evidence to equip the trier of fact to reach the right result.  Jacobs would have the Court "uncover the necessary facts of the case" in light of his inability effectively to present them.  While the trial judge must strive to ensure a fair presentation of the evidence and seek to avoid dismissal through counsel's mere inadvertence, he is not required to carry the plaintiff's burden.  The Bankruptcy Court's handling of the proceedings was proper.

## II.    THE "UNDUE HARDSHIP" TEST

Jacobs' substantive claim on appeal is that the Bankruptcy Court erred in concluding that he had not presented a prima facie case of undue hardship justifying discharge of his student loans.  The Court can only discharge federal student loans in bankruptcy if failure to do so would "impose an undue hardship on the debtor and the debtor's dependents."  11 U.S.C. § 523(a)(8); *In re Reynolds*, 425 F.3d 526, 531 (8th Cir. 2005).  Congress' purpose in enacting the undue hardship requirement was to prevent recent graduates beginning lucrative careers to escape student loan debt.  *In re Long*, 322 F.3d 549, 554 (8th Cir. 2003).  Courts in the Eighth Circuit determine the existence of an "undue hardship" by analyzing the totality of the circumstances.  *Id.* at 553.  Specifically, the Court considers (1) the debtor's past, present and future financial resources, (2) the debtor's reasonable and necessary living expenses, and (3) any other relevant circumstances.  *Id.* at 554 (internal citations omitted).

Crucially in this case, the debtor bears the "rigorous" burden of proving undue hardship by a preponderance of the evidence.  *Educ. Credit Mgmt. Corp. v. Jesperson*,

571 F.3d 775, 779 (8th Cir. 2009).   The undue hardship determination "require[s] a special consideration of the debtor's present employment and financial situation-including assets, expenses, and earnings-along with the prospect of future changes-positive or adverse-in the debtor's financial position."   *In re Long*, 322 F.3d at 555. Moreover, "[a] court may not engage in speculation when determining net income and reasonable and necessary living expenses." *Jesperson*, 571 F.3d at 780.

### A.      Standard of Review

The Court reviews the Bankruptcy Court's factual findings for clear error and its conclusions of law *de novo*.  *See Official Comm. of Unsecured Creditors v. Farmland Indus., Inc. (In re Farmland Indus., Inc.)*, 296 B.R. 188, 192 (B.A.P. 8th Cir. 2003). Undue hardship is a question of law to be reviewed *de novo*.  *Jesperson*, 571 F.3d at 779. Subsidiary findings of fact on which the undue hardship determination is based are reviewed for clear error.  *Id.*  Because "undue hardship" is a legal determination to be reviewed *de novo*, the Court must make an independent assessment of the sufficiency of the evidence before the bankruptcy judge.

### B.      Sufficiency of Evidence

The record paints only a partial picture of the Jacobs' finances, and offers no concrete indication of present or future resources and expenses.<sup>6</sup>  Even assuming all

---

<sup>6</sup> Apart from testifying himself, Jacobs called only one witness at trial, his fourteen-year-old stepson.  While the witness's testimony demonstrates that Jacobs expends both time and money in caring for his stepson, it does not provide detailed evidence that would allow the Court to assess the specifics of any income surplus or deficit.  Moreover, the Court cannot weigh "other relevant circumstances," such as age, health, number of degrees, marketable skills, other

documents referenced in the transcript to be part of the record on appeal, and further assuming them to contain precisely what Jacobs represents that they contain, Jacobs did not make out a *prima facie* case of undue hardship.

A debtor seeking discharge of student loans for undue hardship must equip the Court to draw clear conclusions as to whether the debtor can repay the loan while maintaining a minimal standard of living. *See id.* at 779-80. Jacobs failed to do so. Jacobs did not testify, for example, as to specifics of his current or expected earnings from substitute teaching or about his current or future levels of social security benefits. (*See* Hr'g Tr. at 79-80, 84-85, 88-90.) Nor did Jacobs offer any evidence of his wife's current or expected future income.[7] (*Id.* at 80-81.)

In *Jesperson*, the Eighth Circuit found clear error in the bankruptcy court's use of the estimated tax rate that Jesperson himself had proffered, noting that his failure to make a good faith estimate of the applicable tax rate, in itself, arguably meant that he had failed to carry his burden. *Jesperson*, 571 F.3d at 780. Here, Jacobs did not even present the Court with current income levels which would have equipped it to analyze such other factors as applicable taxes. Jacobs' "vague, general, and very cursory statements" are, as

_____

(Footnote continued.)

obligations to dependents, and mental or physical impairments in the absence of concrete evidence as to Jacobs' present and anticipated future financial condition. *See Jesperson*, 571 F.3d at 780 (listing these factors as relevant).

[7] While Jacobs testified to an informal agreement with his wife prior to marriage that each would keep separate finances, the Bankruptcy Court ruled that it must consider total household income in the undue hardship inquiry. (*Id.* at 81.) Regardless, because the financial arrangement to which Jacobs testified was not a formal written agreement, the Court was correct in concluding it to be "legally irrelevant." (*Id.*) *See* Minn. Stat. § 519.11, subd. 2 (2011) (enumerating formalities for antenuptial agreements, including a writing).

the Bankruptcy Court held, insufficient to allow the Court to reach an undue hardship finding without engaging in precisely the kind of speculation that *Jesperson* proscribes.

The Court sympathizes with Jacobs' deteriorating financial situation. While unable to discharge the student loan debt in bankruptcy, Jacobs may be able to avail himself of one of the various loan repayment options under the William D. Ford Federal Direct Student Loan Program. *See Jesperson*, 571 F.3d at 780-81 (discussing the Income Contingent Repayment Plan); Stip. ¶¶ 16-24 (discussing programs and noting Jacobs' eligibility). Under the Income Based Repayment Plan, Jacobs monthly loan obligation based on his reported 2010 income of $21,008 would be $0/month. Notwithstanding the outcome of this appeal, Jacobs may thus avoid the hardship of making any loan payments until his financial condition has improved.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the decision of the Bankruptcy Court is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  November 14, 2011                    _____s/ John H. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                        United States District Judge